**NATIONAL ORGANIZATION FOR WOMEN, FARMINGTON VALLEY CHAPTER and Susan C. Madison**

v.

**SPERRY RAND CORPORATION, Sperry Univac Division.**

Civ. No. H–77–524.

United States District Court,
D. Connecticut.

Oct. 31, 1980.

Susan R. Meredith, Phyllis Gelman, Connecticut Women's Educational & Legal Fund, Inc., New Haven, Conn., for plaintiffs.

Gary S. Starr, Jay S. Siegel, Siegel, O'Connor & Kainen, Hartford, Conn., for defendant.

RULING ON DEFENDANT'S MOTION TO COMPEL AN ANSWER TO AN INTERROGATORY AND PLAINTIFFS' MOTION TO COMPEL DISCOVERY

CLARIE, Chief Judge.

This case involves alleged employment discrimination by the defendant, Sperry Univac, against the plaintiff, Madison, and also against members of the plaintiff, National Organization for Women (NOW). The plaintiffs have also brought this action on behalf of a class of employees, and prospective employees, who claim to have been injured by the employment practices of the defendant. There has been no determination regarding class certification at this juncture.

The defendant has moved to compel disclosure of the full membership list of NOW. The plaintiffs have moved to compel answers to interrogatories and production of documents, both of which are allegedly necessary for the purpose of class certification. Both motions are granted, as modified by the Court. The questions presented will be discussed separately, beginning with the defendant's motion.

1. On January 19, 1979, the caption of this action was amended, in part, to "National Organization for Women, Farmington Valley Chapter."

2. "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the

*Jurisdiction*

This Court has jurisdiction in this action pursuant to 42 U.S.C. §§ 1988, 2000e–5; 28 U.S.C. § 1343; 29 U.S.C. § 216(b).

### I. Defendant's Motion To Compel an Answer to an Interrogatory

*Facts*

On November 15, 1978, the defendant served on NOW a series of interrogatories including, at paragraph three, a request that NOW supply "the names, sex, race, current address, occupation and present employer of each and every member of the National Organization for Women, Suffield–Enfield Chapter.[1]" The defendant indicated that this information is discoverable under Rule 26(b) of the Federal Rules of Civil Procedure[2] in that it is relevant and not privileged. The relevancy of the information, claims the defendant, is derived from NOW's allegation that a number of its members are aggrieved by certain practices followed by Sperry Univac. Finally, the defendant argues that any privilege regarding the information at issue was waived by NOW due to its initial decision to bring this action.

The defendant's position is rebutted by NOW's claim of privilege, based upon the first amendment's protection of associational rights. This privilege requires particular protection in the case at bar, NOW argues, due to the potential for "retaliation against Chapter members by the defendant or other employers . . . ." NOW denies that its status as a plaintiff should result in a finding of waiver. Finally, NOW claims that the information sought is not relevant in that the individual members of NOW are not plaintiffs, rather, it is the Farmington Valley Chapter of NOW which is the plaintiff in this action.

subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . ." Fed.R.Civ.P. 26(b)(1).

*Discussion of the Law*

On the question of relevancy, the stance taken by each party is too extreme to be sustained. NOW argues that none of the information requested is relevant to this action, yet the complaint clearly alleges that the defendant's actions caused injury to members of NOW. It further alleges that, "NOW has members who are, have been, have sought, or are interested in seeking employment with defendant Sperry Univac and have been and are aggrieved by the sex–based and race–based discriminatory actions of the defendant." Second Amended Complaint, paragraph 4 (filed October 20, 1978). Notwithstanding the grammatical deficiencies of this charge, it does contain allegations of injury to four classes of individuals who are members of NOW: (1) those members who are employed by Sperry Univac, (2) those who were employed by Sperry Univac, and (3) those members who did attempt or (4) who may attempt to obtain employment at Sperry Univac. NOW proposes to identify individual members of the class "after a class is certified.[3]" This position presupposes that certification is assured, but there is no basis for such an understanding. If a class is not certified, NOW can only go forward in this case by establishing that some of its members were injured, as alleged in the complaint. Therefore, the defendant's claim of relevance is, in part, persuasive. *Retail Wholesale & Department Store Union, Local 194 v. Standard Brands,* 19 Fair Empl. Prac. Cas. 721 (N.D.Ill.1979); *Lewis v. J. P. Stevens & Co.,* 11 Fair Empl. Prac. Cas. 364, 366 (D.S.C.1975).

■ NOW has alleged sexual and racial discrimination against some of its members. In order adequately to prepare its defense against these allegations, the defendant is entitled to discover the name, sex, race, current address, and occupation of every member of NOW, Farmington Valley Chapter, who is a current employee of the defendant, who was an employee of the defendant, and who was interested, or who claims that they may be interested, in seeking employment with the defendant. The defendant is not entitled to the requested information regarding any other member of NOW, since no injury to other members has been alleged. Further, the request for information regarding the present employers of the injured members is denied, at least at this stage, since the occupation of those members will be made known to the defendant.

Plaintiff NOW has raised the issue of privilege, based upon the first amendment's protection of associational rights. This privilege is designed to protect members of groups from harassment and intimidation. *Bates v. City of Little Rock,* 361 U.S. 516, 524, 80 S.Ct. 412, 417, 4 L.Ed.2d 480 (1960); *NAACP v. Alabama,* 357 U.S. 449, 462, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958); *Bursey v. United States,* 466 F.2d 1059, 1083 (9th Cir. 1972). Further, NOW rejects the defendant's assertion that, whatever privilege NOW may have held, its status as a plaintiff amounts to a waiver of that privilege.

The Court notes at the outset that the type of harassment which concerns NOW cannot be readily equated with that which was discussed in the cases cited. In *NAACP v. Alabama,* the Court considered the possibility of "threat[s] of physical coercion, and other manifestations of public hostility." 357 U.S. at 462, 78 S.Ct. at 1171. In *Bates,* the Court was also concerned with "harassment and threats of bodily harm." 361 U.S. at 525, 80 S.Ct. at 417. In the instant case, NOW has alleged that the defendant is guilty of a variety of harassing tactics, all of which were summarized in a concluding sentence of one paragraph in the complaint, "Defendant and its agents and employees have created an extremely un-

---

**3.** NOW cites the case of *Brinkerhoff v. Rockwell International Corp.,* 83 F.R.D. 478 (N.D. Tex.1979), in support of its claim that information regarding unnamed members of a class is not relevant. In that case, however, discovery was denied because the defendant sought to obtain information regarding people who had in no way assented to participation in the action. In the case at bar, there is no indication that NOW has brought suit on behalf of members who object to being represented by the association.

pleasant work environment for Ms. Madison." The allegations, if true, describe intolerable practices which must be prevented from recurring. However, there are substantial differences between the difficulties presently alleged by NOW and those which confronted the NAACP in Alabama in 1958. *See Southern Methodist University Association of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 710 (5th Cir. 1979) ("This is not a case involving racial strife or labor informants. Present there, but not here, were dangers of physical harm to the protected parties. Here the harm is at the most economic and at the least social."). This is an important factor in weighing the infringement upon first amendment rights versus the defendant's right to prepare an adequate defense.

Finally, some consideration must be given to the defendant's argument that NOW, by entering this action as a plaintiff, has waived its associational privacy rights. This Court is not of the opinion that one's status as a plaintiff results in full waiver of associational privacy rights, yet it is evident that these rights have been given the fullest protection in those cases where they were claimed by defendants. *E. g., Bates v. City of Little Rock*, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Familias Unidas v. Briscoe*, 544 F.2d 182, 192 (5th Cir. 1976) ("Familias [is] more analogous to ... a defendant than [to] a plaintiff." Thus, the court will not "require them to forfeit that which they seek to protect ...."); *Bursey v. United States*, 466 F.2d 1059 (9th Cir. 1972). NOW has assiduously pursued this action and it seeks substantial recovery from the defendant. It should be cognizant of the fact that "the mere filing of a civil action against other private parties may cause damage to their good names and reputation and may also result in economic harm." *Southern Methodist University Association of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (1979). The fact that the defendant in this case is a corporation does not render the reasoning in *Southern Methodist* inapplicable. Economic harm to a corpora-

tion eventually reaches the individuals associated with it. Fairness dictates that NOW, as a plaintiff, cannot realistically hope to pursue this suit in a risk–free atmosphere.

The foregoing serves to justify some infringement on the associational privacy rights of the members of NOW. However, those individuals have not completely sacrificed their privacy rights, simply by bringing this action. The defendant only requires the information at issue in order to prepare an adequate defense; that information cannot be used for any other purpose. Therefore, the Court finds that the defendant may discover the name, sex, race, current address, and occupation of every member of NOW, Farmington Valley Chapter, who is a current or former employee of the defendant, or who was, or may be, interested in seeking employment with the defendant. Further, the information revealed to defendant's counsel may not be communicated to any other person, including members of the defendant corporation, except upon further application to and specific order of this Court, subject to the contempt powers of the Court.

## II. Plaintiffs' Motion to Compel Discovery

### Facts

On December 22, 1978, the plaintiffs filed twenty–six interrogatories and six requests for production of documents. The defendant answered the first interrogatory and objected to the remaining twenty–five. Objections were also lodged against the requests for production of documents, excepting request number one and part of request number two.

The plaintiffs argue that broad discovery is essential in order that the Court may reach an accurate decision on the issue of class certification. Comprehensive discovery, claim the plaintiffs, will reveal a pattern of discrimination carried on by the defendant. The information requested by the plaintiffs is stated to be "general policy information which should be available in

some central way.[4]" The defendant's opposition to the proposed discovery is based on claims that the requests are overly broad and burdensome, they are irrelevant to the issue of class certification, and some of the material sought represents impermissible inquiries into privileged or confidential areas.

This suit is, as yet, in the pre–certification stage. If class certification is eventually denied, the suit can only go forward with a relatively few plaintiffs: (1) Susan C. Madison and (2) the Farmington Valley Chapter of NOW, as it represents those of its members injured by the defendant. Despite this possibility, the plaintiffs seek pre–certification discovery which could reach into some three hundred Sperry Rand plant facilities across the country, which could involve the personnel files of some thirty-five thousand employees. This could result, says the defendant, in an expenditure of approximately three million dollars. The plaintiffs have countered with the argument that the defendant's conclusions are the result of an exaggerated misconstruction of the interrogatories. There is some basis for this position. Interrogatory number twenty–two, for example, seeks discovery of any allegations, by employees, of sexual or racial discrimination. Instead of offering to supply copies of any applicant or employee complaints which may have been formally filed, the defendant suggests that the interrogatory can only be answered by a series of one–to–three hour interviews with eleven thousand supervisory and personnel representatives, at a cost of over five hundred thousand dollars. This type of misconstruction, however, is the exception rather than the rule. Further, the plaintiffs are adamant regarding their intention to extend their inquiries into every Sperry Rand facility.[5] Such an approach inevitably would lead to an unnecessary magnification of cost and effort.

The plaintiffs have offered a list of information easily available to the defendant which the plaintiffs will accept as full or partial answers to interrogatories. Nonetheless, even this reduced list will result in an expenditure, by the *plaintiffs'* calculations, of three hundred thousand dollars. The plaintiffs have not supplied the Court with any affidavits regarding the source of their calculations, the defendant's basic estimates were carefully researched[6], and even if the plaintiffs' partisan figure of three hundred thousand dollars is correct, it nonetheless represents a very heavy burden on the defendant to satisfy initially the claims of one single employee.

### Discussion of the Law

It is well–established that some discovery is necessary prior to a determination of class certification.

---

**4.** Memorandum in Support of Plaintiffs' Motion for Order Compelling Discovery at 7 (filed May 28, 1980).

**5.** The specific allegations in the complaint involve plaintiff Susan C. Madison's work experiences at the defendant's plant in Windsor, Connecticut. The plaintiffs' resolute desire for discovery beyond this plant was illustrated at the hearing on the motion now at issue.
  "PLAINTIFFS' COUNSEL: The [facility] in Windsor, when Susan Madison worked there, had about 160 people.
  THE COURT: Out of 160 people there you want to investigate 300 branches?
  PLAINTIFFS' COUNSEL: That's right.
  THE COURT: Is that reasonable?
  PLAINTIFFS' COUNSEL: I think so, yes."

**6.** The defendant's memoranda are precise and comprehensive. The two memoranda submitted total 107 textual pages, 7 supporting affidavits, and several appendices. Their usefulness is mitigated by their repetitive nature, yet they do make clear that the plaintiffs' interrogatories, whether by design or by inartful drafting, generally call for herculean labors and intolerable expense in order to effect compliance. *See, e. g.,* Interrogatory Number Five, which calls for the name of every department at Sperry Univac; an organizational chart of all departments, divisions, and other subunits within Sperry Univac, noting the person in charge and the geographic location of each department and subunit; if there were any changes in the organization of Sperry Univac between 1972 and the present, the dates on which each change was made, including any change in the person in charge of each department and subunit. Compliance with this interrogatory, involving all 35,000 Sperry Univac employees at all 300 locations, is estimated to cost more than $1,450,000,000.

"The Court should defer dicision [*sic*] on certification pending discovery if the existing record is inadequate for resolving the relevant issues .... Failure to allow discovery, where there are substantial factual issues relevant to certification of the class, makes it impossible for the party seeking discovery to make an adequate presentation either in its memoranda of law or at the hearing on the motion if one is so held." *Chateau de Ville Productions, Inc. v. Tams–Witmark Music Library, Inc.*, 586 F.2d 962, 966 (2d Cir. 1978).

*See also East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 405–06, 97 S.Ct. 1891, 1897–98, 52 L.Ed.2d 453 (1977) (some discovery is clearly desirable before there is a decision on class certification); *Georgia Power Co. v. EEOC*, 412 F.2d 462, 468 (5th Cir. 1969) (discrimination cannot be discerned by examining data relating to a few individuals; comparative evaluation is obviously essential); *Dickerson v. United States Steel Corp.*, 18 Fed.R.Serv.2d 554 (E.D.Pa.1974) (class action determination should be predicated on more information than that afforded by the complaint).

■ The recognized need for pre–certification discovery is subject to limitations imposed by the Court. "[T]he management of discovery is committed to the sound discretion of the trial court ...." *Chateau de Ville Productions, Inc. v. Tams–Witmark Music Library, Inc.*, 586 F.2d 962, 966 (2d Cir. 1978); *Lewis v. Texaco, Inc.*, 527 F.2d 921, 926 (2d Cir. 1975).

The plaintiffs, in order to obtain class certification, must meet the four requirements of Federal Rule of Civil Procedure 23:

(1) the class is so numerous that joinder is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims and defenses of the representatives are typical of those in the class, and

(4) the representatives will fairly and adequately protect the interests of the class.

The discovery permitted must be sufficiently broad in order that the plaintiffs have a realistic opportunity to meet these requirements; at the same time, the defendant must be protected from discovery which is overly burdensome, irrelevant, or which invades privileged or confidential areas. Discovery is not to be used as a weapon, nor must discovery on the merits be completed precedent to class certification. *Cutner v. Atlantic Richfield Co.*, 16 Fair Empl.Prac. Cas. 743 (E.D.Pa.1977). Unnecessarily broad discovery will not benefit either party. To spend either three million or three hundred thousand dollars, in order to move a mountain of documents and statistics from the defendant's facilities to the plaintiffs' offices, would be, in this pre–certification context, a wasteful and unjustifiable action.

■ To simply deny the requested discovery would force the plaintiffs to redesign their interrogatories, the results of which might then be subjected to new challenges by the defendant. The resulting Sisyphean exercise would contribute little to goals of judicial economy and respect for the resources of a party which is, as yet, innocent. Consequently, after reviewing the plaintiffs' interrogatories and weighing the competing considerations of relevance, privilege, and undue burden,[7] the Court

---

7. When this question has arisen in the past, various boundaries to discovery have been advanced. In *Cutner v. Atlantic Richfield Co.*, 16 Fair Empl.Prac.Cas. 743, 744 (E.D.Pa.1977), the court noted that review of a certification motion requires information concerning the probable number of class members as well as the relationship between personnel policies in various departments. The court suggested, however, that "the relevant statistics can surely be obtained without microscopic examination of each incident in the employment life of every employee .... [A] few depositions of the appropriate officials, or a few limited interrogatories, should be sufficient to point the way to further specific discovery sufficient for plaintiff's purposes." *Id.* at 744–45. In *Karan v. Nabisco, Inc.*, 78 F.R.D. 388 (W.D.Pa.1978), the court suggested that a plaintiff could gain class certification in a sex discrimination suit if discovery were directed toward revealing, (1) that statistical evidence existed, showing a consist-

finds that the following information is discoverable by the plaintiffs:

(1) Each of the twenty–four subsequent interrogatories shall be limited in application to three Sperry Rand facilities: the Sperry Univac Division facility located in Windsor, Connecticut, one Sperry Univac facility located in New Jersey, and one Sperry Univac facility located in Pennsylvania.[8] At this time, information regarding individual employees is only discoverable as it relates to those at management level.

(2) As to each such corporation, the corporate stock of which is owned in whole or in part by the defendant, the plaintiffs may discover:

(a) the full corporate name

(b) the address of the corporate office

(c) the state of incorporation

(d) the state in which it does business

(e) the address of each of its business locations

(f) the kind of business in which it is engaged at each business location.

(3) The plaintiffs have indicated that the material requested in original interrogatory number three was answered by the defendant's memorandum of July 15, 1980. To satisfy the original request, the defendant need only supply the information referred to in the form of a sworn answer.

(4) As far as it can be answered consistently with paragraph one, *supra*, the information sought in original interrogatory number four, regarding the history of Sperry Univac facilities, is discoverable.

(5) The defendant's organizational charts, for the top three–to–five levels of management in the three facilities, are discoverable.

(6) For each level of management named in the answer to paragraph five, *supra*, the following information is discoverable: the job titles within each level of management and the number of employees of each sex in each level of management.

(7) The information requested in original interrogatory number seven, involving all job titles of all employees, is unduly broad. The determination made in paragraph six, *supra*, negates any relevance which this request might otherwise have.

(8) For each job title supplied in answer to paragraph six, *supra*, as of July 1, 1977, the plaintiffs may discover: the number of males holding each job title; the number of females holding each job title.

(9) For every job title supplied in answer to paragraph six, *supra*, the plaintiffs may discover the current job description, if a written job description exists, and a description of the functions, duties, and responsibilities of each job title for which a written job description does not exist.

(10) For every job title supplied in answer to paragraph six, *supra*, the plaintiffs may discover a copy of Sperry Univac's policy on hiring, as referred to on page 36 of Defendant's Memorandum in Opposition to Plaintiffs' Motion to Compel Answers to Interrogatories (July 15, 1980). The description is to include descriptions of actions taken at all levels of the hiring process.

(11) The plaintiffs may discover the universal application form, or forms, used by Sperry Univac since 1970, to the extent that

---

ent pattern of discrimination throughout the system, and/or (2) that class members at several locations made similar charges of discrimination. The court noted, finally, that it could always modify the class as needed when discovery and trial added relevant facts to the record. *Id.* at 404, 407. *See also Burns v. Thiokol Chemical Corp.*, 483 F.2d 300, 305–06 (5th Cir. 1973). The considerations represented by the *Cutner*, *Karan*, and *Burns* opinions were incorporated in the determinations which were made in the case at bar.

8. The New Jersey and Pennsylvania facilities described are those facilities at which plaintiff Susan C. Madison applied for transfers. *See* Hearing on Motions to Compel Answers to Interrogatories, Transcript at 36 (D.Conn. July 21, 1980). The discovery which is thus allowed should be sufficient to show a pattern of discrimination, if one exists, for purposes of class certification. At the same time, if class certification is denied, the named plaintiffs will be in possession of material which will be relevant for purposes of preparing their case, yet which will not have been assembled at great expense to the defendant.

each form was used in the hiring process. The form requested is that which was described on page 39 of the defendant's memorandum of July 15, 1980 and, as before, is discoverable only insofar as it was used in the hiring process for those job titles supplied in answer to paragraph six, *supra.*

(12) Much of the relevant data requested in original interrogatory twelve, dealing with hiring, placement, or promotional testing, is encompassed in the answer to paragraph ten, *supra.* Any part of the request which is not answered by the response to paragraph ten is not discoverable at this time on grounds of overbreadth.

(13) The information requested in original interrogatory number thirteen, involving testing procedures, is not discoverable for the reasons expressed in the resolution of paragraph twelve, *supra.*

(14) If there are periodic progress reports or other evaluations made for each employee at the management level, as described in paragraph five, *supra,* the plaintiffs may discover a description of the evaluative process or processes.

(15) The information requested in original interrogatory number fifteen, involving lists of locations of employee personnel information, is not discoverable in that it is an overly burdensome request, and it is irrelevant to the issue of class certification.

(16) The information requested in original interrogatory number sixteen, involving lists of documents maintained in employee personnel files, is not relevant to the issue of class certification and so is not discoverable at this time.

(17) A copy of the defendant's personnel manual, as described on page 62 of the defendant's memorandum of July 15, 1980, is discoverable.

(18) The information requested in original interrogatory number eighteen, involving the names of custodians of Sperry Univac records, is discoverable.

(19) The information requested in original interrogatory nineteen, involving the types of personnel records maintained by the defendant, is discoverable insofar as it is limited to information regarding people holding the job titles described in paragraph six, *supra,* from January 2, 1973, to the present.

(20) The defendant's recent affirmative action plans which are maintained at the Univac offices in Blue Bell, Pennsylvania, are discoverable. The defendant's claims of privilege, as to interrogatories twenty through twenty–five, are consistently general in nature. Nonetheless, the Court recognizes the claim to the extent that the defendant may omit "critical self–evaluations," *Parker v. Kroger,* 19 Empl.Prac.Dec. 8995 (N.D.Ga.1977), from the materials supplied in answer to original interrogatories twenty, twenty–one, and twenty–three through twenty–five. The protection thus afforded is intended to avoid any adverse impact which disclosure might otherwise have on the defendant's business operations. It is not a response to the rather vague admonition, which the Court repudiates, that disclosure "could seriously jeopardize the Company's willingness to take a positive attitude" toward the inquiries of authorized governmental agencies in this area of the law. Defendant's Memorandum of July 15, 1980, at 87.

(21) The information requested in original interrogatory number twenty–one, regarding utilization analyses, is discoverable.

(22) The plaintiffs may discover any formal complaints or petitions alleging discrimination, on the basis of sex or race, from people holding the job titles described in paragraph six, *supra,* from January 2, 1973, to the present.

(23–25) The information requested in original interrogatories twenty–three through twenty–five, involving governmental review of, or judicial action against, Sperry Univac's employment practices, is discoverable. However, the defendant need only supply those records which are available from the Office of the Division Manager for Equal Employment Opportunity and the Office of the Director of Industrial Relations.

(26) The information requested in original interrogatory twenty–five [*sic*], involving company review of personnel policies, is not relevant to the issue of class certification and so is not discoverable at this time.

The plaintiffs filed six requests for production of documents. Objections were made to requests three through six. As to the original request for production of documents, the Court finds as follows:

(1) The plaintiffs claim that the defendant made a favorable response to only a limited part of document request number two (calling for employee handbooks, personnel memoranda, and other documents describing Sperry Univac personnel policy). Insofar as this request can be answered consistently with the Court's rulings in paragraphs one, five, and six, *supra*, the documents sought in this request are discoverable.

(2) In view of the Court's determinations regarding original interrogatories twenty and twenty–one, and twenty–three through twenty–five, the documents described in requests three, five, and six, involving EEO–1 reports, utilization analyses, and reports prepared or filed with the Office of Federal Contract Compliance, are discoverable.

(3) Similarly, the Court's determination regarding original interrogatory number twenty renders discoverable the affirmative action plan documents described in document request number four.

### Conclusion

The defendant's motion to compel an answer to an interrogatory is granted, as modified by the Court. The plaintiffs' motion to compel discovery is granted, as modified by the Court. SO ORDERED.

Dated at Hartford, Connecticut, this 30th day of October, 1980.